# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| COMPASS LABORATORY SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT F. KENNEDY JR., in his official capacity as Secretary, United States Department of Health and Human Services, <br><br> Defendant. | No. 2:22-cv-02770-SHL-atc; <br> No. 2:23-cv-02018-SHL-cgc |

## ORDER DENYING MOTIONS FOR REVISIONS
## OF INTERLOCUTORY ORDERS

Before the Court are Plaintiff Compass Laboratory Services, LLC's ("Compass") Motions for Revisions of Interlocutory Orders (No. 2:22-cv-02770-SHL-atc, ECF No. 85; No. 2:23-cv-02018-SHL-cgc, ECF No. 72), filed January 17, 2025. Compass requests that the Court revise its March 26, 2024 rulings granting partial summary judgment to then-Defendant Xavier Becerra ("the Secretary"), in his official capacity as the Acting Secretary of the United States Department of Health and Human Services ("HHS"),[1] and denying Compass summary judgment on Counts One and Two. (ECF No. 65.) The Secretary responded on January 31, 2025. (ECF No. 86.) All documents were filed in identical form on these two related dockets; the Court cites to the docket in Case No. 2:22-cv-2770-SHL-atc for simplicity.

For the reasons discussed below, Compass's Motions are **DENIED**.

---

[1] The Defendant is now Robert F. Kennedy, Jr., in his official capacity as Secretary of the United States Department of Health and Human Services. The clerk of the Court is instructed to update the docket.

## BACKGROUND

The complete factual background is included in the Court's March 26, 2024 Order Granting in Part the Secretary's Motion for Summary Judgment and Denying Compass's Motion for Summary Judgment (ECF No. 65), and it will not be repeated here.

Succinctly, Compass, a provider of diagnostic laboratory testing services, was audited on behalf of the Centers for Medicare and Medicaid Services ("CMS") concerning reimbursements it received on Medicare Part B claims. (ECF Nos. 50 at PageID 509; 47 at PageID 253.) The audits resulted in three overpayment decisions by the Secretary. (ECF No. 47 at PageID 254–55.) AdvanceMed Corporation ("AdvanceMed") was the Zone Program Integrity Contractor ("ZPIC") that conducted the data analysis and statistical sampling during each audit. (Id. at PageID 253–54.) In its sample, AdvanceMed included only claims "with a paid amount greater than $0.00," but excluded so-called zero-paid claims—those claims which Medicare declined to reimburse. (Id. at PageID 256.) AdvanceMed appears to have followed standard procedure in excluding the zero-paid claims. See "Composition of the Universe," Medicare Program Integrity Manual ("MPIM"), Chapter 8, § 8.4.3.2.1(B) (2023) ("The universe shall consist of all fully and partially paid claims submitted by the provider . . . .").

Compass has challenged these audits on multiple due process grounds.[2] (See ECF No. 1.) The two counts at issue here are, in Compass's words, "Count One: AdvanceMed's Failure to Produce the Universe of Claims in its Statistical Sampling Violated Plaintiff's Right to Due Process" and "Count Two: AdvanceMed's Failure to Include Unpaid Claims in its Statistical

---

[2] Case Nos. 2:23-cv-02018-SHL-cgc and 2:22-cv-02770-SHL-atc involved audits that had the same approach to the statistical analysis of claims but covered different time periods.

2

Sampling Violated Plaintiff's Right to Due Process." (Id. at PageID 45–46.)  However, Compass has since fine-tuned its adjectives, focusing on the treatment of zero-paid claims in the audits. (See ECF No. 65 at PageID 644.)  Zero-paid claims are claims that CMS deemed unworthy of any reimbursement whatsoever—in other words, Compass received no monetary compensation following a fully-adjudicated reimbursement attempt. (See id.; ECF Nos. 46-1 at PageID 242; 51 at PageID 517.)  Although underpayments (those claims for which some payment is made) are accounted for in the audit, zero-paid claims are not. (See ECF Nos. 65 at PageID 651–52; 47 at PageID 256.)

In August 2023, the parties filed cross motions for summary judgment on Counts One and Two.  Compass argued that it has a protected property interest in CMS reimbursements and the Secretary violated its due process rights by failing to include zero-paid claims and produce the universe of claims in its statistical samplings. (ECF Nos. 46, 46-1.)  The Secretary argued that Compass received due process and the administrative law judges' ("ALJs") final agency decisions on the audits comported with applicable standards. (ECF No. 49.)

On March 26, 2024, the Court denied Compass's motions for summary judgment and granted in part the Secretary's motions. (ECF No. 65.)  Dissatisfied, Compass sought to revisit the rulings by filing motions for leave to file supplemental briefs on November 11. (ECF No. 83.)  In those motions, Compass argued that the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024)—which overruled Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) and was decided after the summary judgment rulings—should be considered here. (Id. at PageID 794–95.)  Noting that the prior rulings did not rely on Chevron, the Court found that Loper Bright did not impact its orders

3

on Counts One and Two and denied Compass's motions for leave to file supplemental briefs on December 12. (ECF No. 84.)

Once again, Compass seeks revisions of the prior rulings here—this time via motions for revisions of interlocutory orders. (No. 2:22-cv-02770-SHL-atc, ECF No. 85; No. 2:23-cv-02018-SHL-cgc, ECF No. 72.) Compass argues that, under Loper Bright, the Court should reconsider its rulings on zero-paid claims, such that failing to include these claims in a sample violates procedural due process. (ECF No. 85 at PageID 815.) Compass also asserts that the Court should revise its orders "to hold that Compass has a cognizable property interest in Medicare reimbursement, and that the Secretary provided constitutionally inadequate procedures by withholding copies of the target universes needed to recreate and validate the extrapolated overpayment calculations." (Id. at PageID 819.) The Secretary responds that Compass provides no basis for the Court to revisit its previous orders. (ECF No. 86 at PageID 826–30.)

## APPLICABLE LAW

District courts have authority under both common law and Federal Rule of Civil Procedure 54(b) to "reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004) (citing Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991)). This relief must be rewarded "sparingly and in rare circumstances." Lindenberg v. Jackson Nat'l Life Ins. Co., No. 2:13-cv-02657-JPM-cgc, 2016 WL 3636278, at *2 (W.D. Tenn. Feb. 1, 2016).

Local Rule 7.3(b) requires a motion for revision of an interlocutory order to "specifically" demonstrate:

> (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new

4

material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

In other words, the Court must determine if there is "(1) an intervening change of controlling law [or fact]; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Rodriguez, 89 F. App'x at 959. However, a motion to revise a prior order cannot be used to "relitigate old matters." Ashraf v. Adventist Health Sys./Sun-belt, Inc., No. 2:17-cv-2839-SHM-dkv, 2018 WL 4431381, at *2 (W.D. Tenn. Sept. 17, 2018).

## ANALYSIS

To begin, Compass contends that, after Loper Bright and presumably under Local Rule 7.3(b)(2), the Court must revisit its assessment that zero-paid claims need not be included in statistical samplings. Compass also argues that the Court did not properly address the procedural due process challenges, warranting revision under Local Rule 7.3(b)(3). As discussed below, neither argument wins the day.

### I. Applicability of Loper Bright

Even though the Court already found that Loper Bright does not apply to its prior rulings,[3] Compass bends over backwards to attempt to argue otherwise. And, regardless of Loper Bright's applicability to previously decided cases, Compass's argument lacks legal support.

---

[3] In its orders denying Compass's motions for leave to file supplemental briefs, the Court determined that the Supreme Court did not intend for Loper Bright to be retroactive. (ECF No. 84 at PageID 798–99.) Compass challenges whether retroactivity concerns are implicated here by citing to Utah v. Su, 109 F.4th 313, 322 (5th Cir. 2024), which vacated a district court's judgment and remanded it for a limited purpose of reconsideration in light of Loper Bright. (ECF No. 85-1 at PageID 804.) However, the order at issue in Su included a Chevron analysis and the Supreme Court decided Loper Bright while the Su appeal was pending before the Fifth Circuit. 109 F.4th at 317, 319. Because this Court did not conduct a Chevron analysis when ruling on Counts 1 and 2, this comparison is inapplicable.

Although it does not explicitly say so, Compass seems to argue that Local Rule 7.3(b)(2) warrants a new ruling. It argues that the Court essentially engaged in a Chevron analysis when it determined that underpayments did not include zero-paid claims. (ECF No. 85-1 at PageID 805, 812, 814–15.) That implicit Chevron analysis, Compass argues, led the Court astray in finding no due process violation in the fact that the audit excluded all zero-paid claims from its statistical sampling. (Id.) According to Compass, after Loper Bright, the Court should apply its "full interpretive toolkit" to the "ambiguous" term "underpayment" in 42 U.S.C. § 1395ddd(h), and should re-interpret "underpayment" to include zero-paid claims. (Id. at PageID 815–20; ECF No. 85 at PageID 800–01.) Compass asserts that, when defining "underpayment" in his motions, the Secretary focused on what, according to Compass, is sub-regulatory guidance requiring judicial interpretation—the MPIM ("Medicare Program Integrity Manual"). (ECF No. 85-1 at PageID 810 n.1.) However, the Secretary contends that Loper Bright is inapplicable and Compass's arguments about the term "underpayment" do not change the outcome. (ECF No. 86 at PageID 826–28.)

Contrary to Compass's assertions, the Supreme Court's overruling of Chevron in Loper Bright does not impact the Court's decisions that "underpayment" does not include zero-paid claims. Chevron and Loper Bright address the "resolution of statutory ambiguities." Loper Bright, 603 U.S. at 403.[4] However, in the challenged rulings, the Court neither reviewed

---

[4] Chevron "appl[ied] only 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'" Loper Bright Enters. v. Raimondo, 603 U.S. 369, 404–05 (2024) (quoting United States v. Mead Corp., 533 U.S. 218, 226–27 (2001)). Moreover, Loper Bright provided that, when determining if an agency has acted in accordance with its statutory authority, "[c]ourts must exercise their independent judgment" and "not defer to an agency interpretation of [the statute] simply because [it] is ambiguous. Id. at 412–13.

ambiguous statutory language nor regulations that an agency disseminated to address ambiguous statutory language. The Court did consider MPIM—a robust manual that CMS issues to offer guidance around audits, overpayment extrapolations, and sampling—to determine that the universe of claims does not need to include zero-paid claims. (ECF No. 65 at PageID 649–50 (quoting MPIM Ch. 8 § 8.4.3.2.1) ("[T]he universe of claims need not include zero-paid claims: 'The universe shall consist of all fully and partially paid claims submitted by the provider.'"), PageID 652 (quoting MPIM Ch. 8 § 8.4.5) (emphasis removed) ("Sampling units that are found to be underpayments, in whole or in part, are recorded as negative overpayments and shall be used in calculating the estimated overpayment.").) But Loper Bright's ruling does not extend to agency interpretations of regulations. See United States v. Boler, 115 F.4th 316, 322 n.4 (4th Cir. 2024) (determining that "Loper Bright dealt specifically with ambiguities in statutory directives to agencies and did not address the issue of agency interpretations of their own regulations"); United States v. Prather, 138 F.4th 963, 974–75 (6th Cir. 2025). Additionally, Loper Bright does not implicate judicial review of agency guidance materials. See Hicks v. Comm'r of Soc. Sec., No. 7:23-CV-70, 2024 WL 3901190, at *2 n.3 (E.D. Ky. Aug. 19, 2024) (quoting Loper Bright, 603 U.S. at 413) ("[T]hough Loper overruled Chevron, it also stated that 'when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it.'"). Because the Court turned to agency-issued MPIM, rather than an ambiguous statute, to determine what claims should be considered in the universe, its rulings are not within Loper Bright's purview.

Moreover, the statute that Compass seeks to invoke to re-evaluate whether zero-paid claims must be included in a statistical sample as an underpayment, 42 U.S.C. § 1395ddd(h), is inapplicable. As the Secretary previously argued, Section 1395ddd(h) relates to "use of recovery

7

audit contractors," a specific type of contractor. (ECF No. 51 at PageID 522–23.) However, AdvanceMed—the relevant contractor—is not a "recovery audit contractor," but rather a ZPIC. (Id. at PageID 523; ECF No. 86 at PageID 827–28.) Compass has not demonstrated how statutory language relating specifically to a "recovery audit contractor" would apply. (See generally ECF Nos. 85; 85-1). Therefore, Section 1395ddd(h) is inapplicable.

Compass has not demonstrated that Loper Bright justifies revising the Court's prior orders.

## II.     Challenges to Procedural Due Process Rulings

Next, Compass takes issue with several parts of the Court's procedural due process analyses. It laments the lack of a definitive ruling on whether Compass has a cognizable property interest in Medicare reimbursement payments and argues that Compass's arguments were ignored. (ECF Nos. 85 at PageID 800; 85-1 at PageID 807.) Compass also contends that its arguments that AdvanceMed failed to produce the target universes of claims in its statistical sampling were not addressed. (See ECF No. 85-1 at PageID 803–04, 807–09, 813–14.) According to Compass, because the Court did not address these issues, the prior orders must be revised. (See id. at PageID 809.) The Secretary responds that Compass "simply wants to reargue the issue, without justification." (ECF No. 86 at PageID 828.) All that Compass would be owed if it did have a "protected property interest," the Secretary argues, would be an opportunity to be heard on the deprivation of that property interest—an opportunity which it already received through Medicare's comprehensive appeal process. (Id.) The Secretary further asserts that, because "nothing has changed, in law or in fact" since the March 2024 ruling, Compass fails to demonstrate why the Court should revise its prior rulings.

8

Although the Court did not conclude as a matter of law that there is a due process property interest in CMS reimbursements (see ECF No. 65 at PageID 648), it assumed that there was and considered Compass's procedural due process claim, as the Sixth Circuit did in <u>A1 Diabetes & Medical Supply v. Azar</u>, 937 F.3d 613, 619 (6th Cir. 2019) (assessing due process challenges to Medicare reimbursement payments with the assumption that the provider bringing the action "has a property interest in getting paid for its equipment and services"). Thus, reaching a definitive answer on Compass's property interest argument was unnecessary before continuing the analysis.

As for the due process analysis, the Court ruled that Compass did not suffer from due process violations related to the universe of claims, and that the Secretary's procedures conformed with protocols. Compass's arguments about incomplete universes center around the exclusion of zero-paid claims in the statistical sampling. (See ECF No. 46-1 at PageID 248.) Although Compass challenges this exclusion, ALJs have ruled that "[t]he universe shall consist of all fully and partially paid claims submitted by the provider." MPIM Ch. 8 § 8.4.3.2.1(B). ALJs have also found that "a valid statistical sample . . . may exclude underpayments and zero payments without affecting the sample validity." <u>Open Arms Home Care, Inc.</u>, No. M–11–2605, 2013 WL 8913143, at *12 (Medicare Appeals Council Sept. 17, 2023). Indeed, the ALJs who considered these matters, McCormick and Parish, found that the statistical sampling and extrapolation in both matters met administrative rulings' requirements. (ECF No. 65 at PageID 649–50.) As the Court previously observed, these decisions make sense to a healthcare layperson, for including zero-paid claims could lead companies seeking CMS reimbursement to have "perverse incentives." (<u>Id.</u> at PageID 651.) The Court thoroughly addressed Compass's

9

concerns, upheld the ALJ rulings on this issue, and determined that there were no potential due process violations regarding the universe of claims.

Compass has failed to demonstrate that the Court's rulings on the procedural due process arguments in Counts One and Two culminated in "a manifest failure" warranting revised orders.

## CONCLUSION

Because Compass has not demonstrated that revision of interlocutory orders is appropriate under Local Rule 7.3(b), the Motions are **DENIED**.

**IT IS SO ORDERED,** this 24th day of September, 2025.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
CHIEF UNITED STATES DISTRICT JUDGE