**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| COMPASS LABORATORY SERVICES, LLC, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:22-cv-02770-SHL-atc; No. 2:23-cv-02018-SHL-cgc |
| ROBERT F. KENNEDY JR., in his official capacity as Secretary, United States Department of Health and Human Services, | ) ) ) ) | |
| Defendant. | ) ) | |

**ORDER GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

This matter centers around a dispute about Medicare payments for laboratory tests, and a provider challenging the audits of those payments. Plaintiff Compass Laboratory Services, LLC ("Compass"), a provider of diagnostic laboratory testing services, was audited concerning reimbursements it received for Medicare Part B[1] claims. (No. 2:23-cv-02018-SHL-cgc ("23"), ECF No. 61 at ¶¶ 1, 15; No. 2:22-cv-2770-SHL-atc ("22"), ECF No. 74 at ¶¶ 9–21.) The audits resulted in three overpayment decisions by then-Defendant Xavier Becerra, in his official capacity as Secretary of the United States Department of Health and Human Services ("HHS") ("the Secretary"),[2] and recoupment of reimbursement payments deemed improper. Compass contests the overpayment decisions arising from these audits and argues that the undue length of the related appeals processes violated its due process rights.

---

[1] Medicare Part B is a supplementary medical insurance program that was authorized under Part B of Title XVIII of the Social Security Act. 42 U.S.C. § 1395k(a)(1); 42 C.F.R. § 400.202.

[2] The Defendant is now Robert F. Kennedy, Jr., in his official capacity as Secretary, United States Department of Health and Human Services. See Fed. R. Civ. P. 25(d). The clerk of the Court is instructed to update the docket.

Compass contests the Secretary's decisions in two different but related cases. Case Number 2:23-cv-02018-SHL-cgc involves Compass's disputes arising out of a demand letter for $9,266,990.53 sent on January 21, 2015, or the "$9.3 Million Matter," and a demand letter for $1,231,973.77 sent on February 2, 2016, or the "$1.2 Million Matter." (See 23, ECF No. 61 at ¶¶ 11–12, 14.) Case Number 2:22-cv-02770-SHL-atc addresses Compass's disputes related to a demand letter for $3,354,936.48 sent on September 11, 2015, or the "$3.4 Million Matter."[3] (See id. at ¶ 12; 22, ECF No. 74 at ¶ 10.) The cases were consolidated because of their similarities. (See 22, ECF No. 29.) Although the facts described below include both cases, not all of the facts are relevant to both matters. While the agreed-upon facts vary slightly between the dockets, the legal arguments applicable to both cases are the same.[4]

The parties have each filed motions for summary judgment in both cases. The first is the Secretary's Motion for Summary Judgment on All Remaining Issues (22, ECF No. 71), filed May 23, 2024, which Compass responded to on June 20 (22, ECF No. 77). The Secretary replied on July 5. (22, ECF No. 79.) The second motion is Compass's Second Motion for Summary Judgment (22, ECF No. 73), filed May 23, 2024. The Secretary responded on June 20. (22, ECF No. 75.) The filing dates and titles of the documents are the same on both dockets. Notably, the parties agree that there are no genuine issues of material fact, and that the result turns on who is correct on the law.

---

[3] Although its first complaint for the $3.4 Million Matter was originally filed in the District of the District of Columbia (see 22, ECF No. 1), the case was transferred to this Court on November 8, 2022 (22, ECF No. 11).

[4] The Court cites to the docket in Case Number 2:22-cv-2770-SHL-atc for simplicity when referring to the parties' motions, unless otherwise noted.

For the reasons discussed below, Compass's motions for summary judgment are

**DENIED** and the Secretary's motions for summary judgment are **GRANTED**.

## BACKGROUND

### I.    The Medicare Program and Post-Payment Audits

Providers voluntarily participate in the Medicare program, which compensates them for

"facially valid claims" for services rendered and "conducts post-payment audits to detect

overpayments."  Sahara Health Care, Inc. v. Azar, 975 F.3d 523, 525 (5th Cir. 2020) (internal

citations omitted).  The Centers for Medicare and Medicaid Services ("CMS") uses contractors

to assist in processing and auditing claims.  (22, ECF No. 74 at ¶ 3; 23, ECF No. 61 at ¶ 3.)  A

Medicare Administrative Contractor ("MAC") is responsible for processing and paying for

services rendered for Medicare beneficiaries and, where called upon to do so, issuing reviews of

certain decisions as part of the Medicare claim appeals.  (23, ECF No. 61 at ¶ 6.)  A Zone

Program Integrity Contractor ("ZPIC") conducts data analysis and statistical sampling related to

audits.  (23, ECF No. 61 at ¶ 5.)

In post-payment audits, CMS contractors assess "a random sample of a provider's

Medicare claims."  Gen. Med., P.C. v. Azar, 963 F.3d 516, 519 (6th Cir. 2020) (citing 42 U.S.C.

§ 1395ddd(f)(4)).  Auditing contractors first review the records and then determine an error rate.

Id.  "If there is a sustained or high level of payment error, the CMS contractor will extrapolate

that error rate over the provider's total Medicare claims to determine a total amount of

overpayment."  Id. (citing 42 U.S.C. § 1395ddd(f)(3)).  Using sampling as a basis for

extrapolation "creates a presumption of validity as to the amount of an overpayment which may

be used as the basis for recoupment."  Maxmed Healthcare, Inc. v. Price, 860 F.3d 335, 337 (5th

Cir. 2017) (citing CMS Ruling 86-1).  "Recoupment" is "the recovery by Medicare of any

outstanding Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness."  42 C.F.R. § 405.370.

After this analysis of a provider's claims, Medicare contractors provide notice by way of demand letters to alert providers of the repayment requested, the reasons for the determination, and their right to appeal.  See 42 C.F.R. §§ 405.920–21.  Forty-one days after the initial overpayment demand, assuming no appeals, contractors can begin recoupment.  See 42 C.F.R. § 405.379(d)(1).  If a provider successfully appeals an overpayment decision after recoupment has begun, the provider will receive "the wrongfully recouped payments" back, with interest.  Sahara, 975 F.3d at 527 (citing 42 U.S.C. § 1395ddd(f)(2)(B)).

Here, after providing services, Compass submitted claims for laboratory services provided to Medicare beneficiaries to Cahaba Government Benefit Administrator ("Cahaba"), the relevant MAC.  (23, ECF No. 61 at ¶¶ 7, 15–16.)  AdvanceMed Corporation ("AdvanceMed") was the "ZPIC" that conducted the data analysis and statistical sampling during Compass's three separate audits.  (Id. at ¶ 5.)  Through "statistical sampling," AdvanceMed used extrapolation to conclude that CMS overpaid Compass the estimated amounts in the $9.3 Million Matter, the $3.4 Million Matter, and the $1.2 Million Matter.  (23, ECF No. 61 at ¶¶ 4, 10–13, 57; 22, ECF No. 74 at ¶ 12.)

Each matter involved the same approach to the statistical analysis of claims but covered different time periods.  The $9.3 Million Matter covered testing services that Compass provided to Medicare beneficiaries from January 2012 through the end of January 2014 (23, ECF No. 61 at PageID 1703–05); the $3.4 Million Matter involves claims for services rendered from February 2014 through the end of September 2014 (22, ECF No. 74 at PageID 730–32); and the

$1.2 Million Matter includes diagnostic testing conducted from October 2014 through January 26, 2015 (23, ECF No. 61 at PageID 1705–06).

After the overpayment assessments were determined, demand letters were issued to Compass for the $9.3 Million Matter on January 21, 2015; for the $3.4 Million Matter on September 11, 2015; and for $1.2 Million Matter on February 2, 2016.  (Id. at ¶¶ 11–13.) Compass appealed all three demand letters.

## II.    Appeals Process

Providers objecting to a Medicare payment determination face a five-step appeals process.  See Cumberland Cnty. Hosp. Sys., Inc. v. Burwell, 816 F.3d 48, 53 (4th Cir. 2016) ("The Medicare Act establishes deadlines for each step in the administrative review process and specifies the consequences when such deadlines are not met.").  If a decision made during a step is "favorable" or "fully favorable," the decision was made in the provider's favor.  See OMHA Case Processing Manual § 12.2.1, https://www.hhs.gov/sites/default/files/ch16-decisions-10-09-2019.pdf.  If a decision is "unfavorable," no issue related to payment or coverage was made in the provider's favor, resulting in the provider being responsible for the overpayment.  If a decision is "partially favorable," some of the issues regarding payment and/or coverage were made in the provider's favor compared to the previous step in the process, but some were not. See id.

### A.    Redetermination and Reconsideration Appeals (Step 1 and Step 2)

A provider can first appeal to an HHS contractor not involved in the original assessment for "redetermination."  See 42 C.F.R. § 405.948.  If the provider is still dissatisfied, it can seek the second step, which is "reconsideration" from a Qualified Independent Contractor ("QIC"). See 42 C.F.R. § 405.960.  For all three matters at issue here, C2C Solutions, Inc. ("C2C") was

the QIC that evaluated the redetermination decisions.  (23, ECF No. 61 at ¶¶ 8–9; 22, ECF No. 74 at ¶ 7.)

During the first two steps, providers must explain disagreements with the initial determination in writing and may submit additional evidence.  See 42 U.S.C. §§ 1395ff(a)(3), (b)-(c), (g).  However, additional evidence may not be submitted after the second step without a showing of good cause.  See 42 U.S.C. § 1395ff(b)(3); 42 C.F.R. § 405.966(a)(2).  Each step culminates in written explanations explaining decisions.  See Sahara, 975 F.3d at 526 (5th Cir. 2020).  Recoupment cannot occur during Steps 1 and 2 of the appeals process.  42 C.F.R. § 405.379(d).  However, if Step 2 affirms an overpayment decision in whole or in part, then the Secretary can initiate or resume recoupment.  Id.

Here, after demand letters were issued to Compass for the three audits—the $9.3 Million Matter, the $3.4 Million Matter, and the $1.2 Million Matter—Compass appealed.  Compass's Step 1 Redetermination Requests all resulted in wholly unfavorable redetermination decisions by Cahaba.  (23, ECF No. 61 at ¶ 41 (discussing the $9.2 Million Matter), ¶ 48 (discussing the $1.2 Million Matter); 22, ECF No. 74 at ¶ 22 (discussing the $3.4 Million Matter).)  After receiving these Step 1 denials, Compass requested audit and statistical sampling data and documentation for the $9.2 Million Matter and $3.4 Million Matter.  (23, ECF No. 61 at ¶ 42 (discussing Compass's request for documents from C2C in the $9.3 Million Matter); 22, ECF No. 74 at ¶ 23 (discussing Compass's requests for documents from Cahaba in the $3.4 Million Matter).)  Although the parties originally contested whether Compass received the sought-after data or documentation (23, ECF Nos. 61 at ¶ 42, 63 at ¶ 42; 22, ECF Nos. 74 at ¶ 23; 76 at ¶ 23), the Secretary found examples in the record of AdvanceMed, Cahaba, and C2C responding and providing sought-after materials (22, ECF No. 79 at PageID 780–81 n.2).

6

Following the wholly unfavorable decisions in Step 1, Compass moved to Step 2.  (23,

ECF No. 61 at ¶ 43 (discussing the $9.3 Million Matter), ¶ 49 (discussing the $1.2 Million

Matter); 22, ECF No. 74 at ¶ 24 (discussing the $3.4 Million Matter).)  For each matter, C2C

evaluated Step 2's reconsideration of the redetermination decisions.  (23, ECF No. 61 at ¶¶ 8–9.)

C2C issued revised, partially favorable Reconsideration Decisions for the $9.3 Million Matter

and $1.2 Million Matter audits.  (23, ECF No. 61 at ¶ 43 (discussing the $9.3 Million Matter), ¶

49 (discussing the $1.2 Million Matter).)  Thus, C2C found partially in Compass's favor for

those two matters.  (See 23, ECF No. 1-1 at PageID 70 (discussing the $9.3 Million Matter), 71

(discussing the $1.2 Million Matter).)  But for the $3.4 Million Matter, C2C's decision was

wholly unfavorable to Compass.  (22, ECF No. 74 at ¶ 24.)  There, C2C "upheld the sample and

denied the medical necessity for each claim."  (22, ECF No. 1-1 at PageID 52.)

### B.    ALJ Hearing (Step 3)

If a provider is not satisfied with the outcomes of the first two steps, it may request a

hearing before an administrative law judge ("ALJ") within the Office of Medicare Hearings and

Appeals ("OMHA"), who reviews the case de novo.  42 U.S.C. § 1395ff(d); 42 C.F.R. §

405.1000(d).  During the third step, the ALJ "shall conduct and conclude a hearing on a decision

of a [QIC] and render a decision on such hearing by not later than the end of the 90-day period

beginning on the date a request for hearing has been timely filed."  42 U.S.C. § 1395ff(d)(1)(A).

Because it remained dissatisfied after each of the reconsideration responses, none of which were

fully in its favor, Compass requested ALJ hearings for each matter.

First, on July 28, 2016, Compass requested an ALJ hearing to appeal C2C's

Reconsideration Decision for the $3.4 Million Matter.  (22, ECF No. 74 at ¶¶ 25, 30–31.)  Before

the hearing, Compass requested the case file from OMHA on March 23, 2021, received an

unrelated case file, alerted OMHA to the issue on April 1, and ultimately received the correct

case file on June 2.  (Id. at ¶¶ 26–29.)  Compass also submitted a brief in support of the hearing,

which included additional evidence and a new expert report.  (Id. at ¶¶ 32–33.)  Nearly five years

after Compass's request for a timely ALJ hearing, Compass received the Notice of Hearing from

OMHA on June 22, 2021.  (Id. at ¶ 30.)  The hearing for the $3.4 Million Matter was held before

Administrative Law Judge Steven R. Parrish ("ALJ Parrish") on September 14–15, 2021.  (Id. at

¶¶ 30–31.)  After the hearing, ALJ Parrish issued a decision wholly unfavorable to Compass on

December 22, 2021.  (22, ECF Nos. 72 at ¶ 1; 74 at ¶ 34.)  ALJ Parrish discussed each Medicare

claim in the sample and determined that none of the claims satisfied the applicable criteria for

Medicare payment.  (22, ECF No. 72 at ¶ 2.)

Compass also requested hearings for the $9.3 Million Matter and $1.2 Million Matter on

July 6, 2017.  (23, ECF No. 61 at ¶ 44.)  Based on a Compass motion filed on January 28, 2022,

Administrative Law Judge Kevin McCormick ("ALJ McCormick") determined that

documentation essential to resolving both matters was missing from the record.  (Id. at ¶ 45.)

OMHA sent C2C a letter requesting the target universes of claims on February 4, 2022.  (Id.)

Ten days later, C2C responded to OMHA's request, stating that C2C had submitted to OMHA

all available documentation.  (Id. at ¶ 46.)[5]

ALJ McCormick consolidated the $9.3 Million Matter and $1.2 Million Matter into a

single ALJ hearing.  (Id. at ¶ 44.)  At ALJ McCormick's request, Compass submitted two

supplemental briefs.  (Id. at ¶¶ 53–55.)  The hearing was held April 12–14, 2022, nearly five

years after Compass's request.  (Id. at ¶¶ 47, 51.)  After the hearing, on August 16, 2022, ALJ

McCormick issued a partially favorable decision.  (Id. at ¶ 47; see also 23, ECF No. 1-1 at

_____

[5] See also 23, ECF No. 1-1 at PageID 72 (discussing this exchange).

PageID 356 ("[T]his decision is PARTIALLY FAVORABLE.  Medicare is responsible for payment for the covered services.  The Appellant [Compass] is responsible for the noncovered costs.").)  Although ALJ McCormick found the statistical sampling and extrapolation of overpayments valid, he made fully favorable determinations on some of the individual claims' merits and ordered that the overpayment account be recalculated.  (Id. at ¶ 57.)  ALJ McCormick discussed each Medicare claim in the sample.  (22, ECF No. 72 at ¶¶ 5–6.)

As part of his decision, ALJ McCormick determined that "the record does contain complete documentation . . . and [Compass] does have the information and data necessary . . . ." (23, ECF No. 1-1 at PageID 83, 87; see also 23, ECF No. 63 at ¶ 45.)

### C.    Option to Bypass Step 3 ALJ Hearing

When an ALJ fails to issue a decision within ninety days of a request, the provider seeking a hearing can forfeit their right to an ALJ hearing and pursue immediate review by the Medicare Appeals Council ("Council") under Step 4.  See 42 C.F.R. § 405.1016(f).  Escalation is at the provider's discretion.  See id.; 42 U.S.C. § 1395ff(d)(3).  If the matter is escalated, the Council can "[i]ssue a decision based on the record constructed at the QIC and any additional evidence, including oral testimony, entered in the record by the ALJ or attorney adjudicator before the case was escalated."  42 C.F.R. § 405.1108(d)(1).  If escalated past ALJ review, the Council has 180 days to make a decision.  42 C.F.R. § 405.1100(d).

Here, Compass did not seek to escalate either matter.  Rather, it chose to wait for the ALJ hearings to conclude before appealing to the Council.

### D.    Council Appeal (Step 4)

The fourth step involves an appeal to the Council after an ALJ decision for further de novo review.  42 C.F.R. § 405.1100; see also 42 U.S.C. § 1395ff(d)(2)(A); 42 C.F.R. §

405.1108(a).  Unless a provider has escalated the appeal past the ALJ, the Council has ninety

days to make its decision.  42 C.F.R. § 405.1100(c).  If a provider does not receive a decision

within that ninety-day time frame, it may request escalation to federal district court.  42 CFR §

405.1132(a).  After receiving the escalation request, the Council has five days to issue a decision,

dismissal, or remand.  Id.

Still dissatisfied after the results of the ALJ hearings, Compass requested that the Council

review both ALJ decisions.  ALJ Parrish's decision regarding the $3.4 Million Matter was

appealed on February 24, 2022.  (22, ECF No. 74 at ¶ 35.)  ALJ McCormick's decision in the

$9.3 Million Matter and $1.2 Million Matter was appealed on September 9, 2022.  (23, ECF No.

61 at ¶ 58.)  Although the Council had ninety days to act after Compass sought review, it did not

do so.  (22, ECF No. 74 at ¶ 36; 23, ECF No. 61 at ¶ 59.)

Months after it appealed, Compass requested escalation to federal court under 42 CFR §

405.1132(a).  (22, ECF No. 74 at ¶ 36; 23, ECF No. 61 at ¶ 59.)  After the escalation requests,

the Council did not act within the five-day time frame.  (22, ECF No. 74 at ¶ 37; 23, ECF No. 61

at ¶ 60.)  Compass followed up with the Council after the five-day time frames had passed for

both requests but received no response.  (22, ECF No. 74 at ¶ 38; 23, ECF No. 61 at ¶ 61.)

### E.     Federal District Court (Step 5)

Here, Compass's complaints include six counts for each of the two cases:

- In Counts One and Two, Compass alleges that "AdvanceMed's failure[s] to produce the universe of claims in its statistical sampling" and its "failure[s] to include unpaid claims in its statistical sampling" violated Compass's due process rights.  (22, ECF No. 1 at PageID 45–46 (capitalization modified).)
- In Count Three, Compass alleges that the ALJ's delays led to improper accumulations of interest, violating Compass's right to due process.  (Id. at PageID 47.)
- In Count Four, Compass alleges that the Secretary "improperly" recouped funds, violating due process and the Social Security Act.  (Id. at PageID 47–48 (capitalization modified).)

10

- In Count Five, Compass alleges that the Secretary "improperly accounted" for payments Compass had made and deprived Compass of its property and due process rights.  (Id. at PageID 48–49 (capitalization modified).)
- In Count Six, Compass alleges that the ALJ made "various procedural failings in rendering a decision," which deprived Compass of its right to due process.  (Id. at PageID 49 (capitalization modified).)

On prior cross motions for summary judgment on the first two counts of Compass's Complaint, the Court granted in part the Secretary's motion and denied Compass's.[6]  (22, ECF No. 65 at PageID 653.)  The result of that decision was that Compass's first two counts—alleging due process violations related to the universe of claims (Count One) and the failure to include zero-paid claims in the sampling (Count Two)—were dismissed with prejudice.[7]  (Id.)  Compass has conceded that Counts Five and Six were also mooted by the previous order.  (22, ECF Nos. 73 at PageID 709; 73-1 at PageID 714–15.)  Thus, only Counts Three and Four remain before the Court, and are addressed here.

As for Counts Three and Four, Compass argues, based on the undisputed facts, that the Secretary, as a matter of law, violated Compass's due process rights and thus the overpayments should be invalidated.  Such a ruling would require the Secretary to refund Compass the amount of the recouped payments, plus interest.  (22, ECF No. 73 at PageID 710)  Conversely, the Secretary seeks summary judgment in his favor, specifically an affirmation of the final agency decisions regarding Compass's Medicare appeals.  (22, ECF No. 71 at PageID 668.)

---

[6] This ruling applied to both dockets.  (See 22, ECF No. 65.)

[7] Compass has since filed motions for revisions of interlocutory orders, to be addressed separately.  (See 22, ECF No. 85.)

**APPLICABLE LAW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, both parties agree that there are no genuine issues of material fact, but both believe they are entitled to judgment as a matter of law. Errors of law are reviewed <u>de novo</u>, and the Court "must reverse and remand if the ALJ applied incorrect legal standards, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different." <u>See</u> <u>Kalmbach v. Comm'r of Soc. Sec.</u>, 409 F. App'x 852, 859 (6th Cir. 2011). When reviewing final agency decisions rendered by HHS under 42 U.S.C. § 1395ff(b)(1), district courts review the administrative record[8] to assess the decision under the deferential substantial evidence standard. <u>See</u> <u>Gen. Med.</u>, 963 F.3d at 519–20.

**ANALYSIS**

Compass argues that summary judgment is appropriate on its two outstanding procedural due process claims. (22, ECF No. 73.) According to Compass, the Secretary violated its due process rights as a matter of law by improperly delaying its ALJ hearings (Count Three), resulting in increased interest owed, and by improperly recouping Compass's funds (Count Four). (22, ECF No. 73-1 at PageID 714.) In his summary judgment motion, the Secretary seeks judicial affirmation of HHS' final decisions on Compass's Medicare reimbursement matters. (22, ECF No. 71 at PageID 668.) He argues that the final decisions are in line with the evidence and applicable standards. (<u>Id.</u> at PageID 674–78.)

---

[8] This case has a "closed administrative record" and "neither party may put any additional evidence before the district court." (22, ECF No. 45 at PageID 223.)

The Court first considers Compass's motions for summary judgment, followed by the Secretary's motions.

## I.    Compass's Summary Judgment Motions

Compass's motions for summary judgment address the two remaining counts—Counts Three and Four.  In Count Three, Compass contends that its procedural due process rights[9] were violated when it experienced unlawful delays during the Medicare appeals process, leading to an improper accumulation of interest.  (22, ECF No. 73-1 at PageID 715.)  In Count Four, Compass asserts that the Secretary violated the Social Security Act and due process by improperly recouping funds while withholding statistical sampling documentation.  (Id.)  The Secretary

---

[9] A protected property interest must be at stake when making a claim under the due process clause.  Fowler v. Benson, 924 F.3d 247, 256 (6th Cir. 2019) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).  Therefore, Compass's right to due process depends on having a protected property interest in Medicare reimbursements for services rendered to beneficiaries.  (22, ECF No. 73-1 at PageID 715, 719–22.)  In its previous Order on the parties' prior cross motions for summary judgment, the Court concluded that

> Medicare Part B beneficiaries—otherwise known as patients who are at least sixty-five years old or disabled—have a due process property interest in payments made on their behalf for medically necessary services that have already been rendered by a medical provider and that have been, in a way, paid in advanced through monthly premiums.  See Himmler v. Califano, 611 F.2d 137, 145 (6th Cir. 1979); Bailey v. Mutual of Omaha Ins. Co., 534 F. Supp. 2d 43, 53–54 (D.C. Cir. 2008).  Compass tries to embrace that property interest as their own in an unconvincing manner.  (ECF No. 46-1 at PageID 239–240.)  The Sixth Circuit has not taken a stance on whether providers like Compass have a due process property interest in CMS reimbursements.  See A1 Diabetes & Med. Supply v. Azar, 937 F.3d 613, 619 (6th Cir. 2019).  This Court will not take a stance either[.]

(22, ECF No. 65 at PageID 648.)  Once again, the Court will not take a position on this question. However, the Court will evaluate Compass's due process challenges as if it has a protected property interest in Medicare reimbursement for services provided to beneficiaries.  See A1 Diabetes, 937 F.3d at 619 (assessing due process challenges to Medicare reimbursement payments with the assumption that the provider bringing the action "has a property interest in getting paid for its equipment and services").

argues in response that "Compass comes forward with no meaningful argument that it suffered any constitutional deprivation" and cannot obtain relief. (22, ECF No. 79 at PageID 781; see also 22, ECF No. 71 at PageID 678–82.)

Procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citation modified). "And violation of a statutory deadline does not automatically mean a lack of due process; the Constitution, not statutes, determine[s] the minimum procedures that due process requires." Palm Valley Health Care, Inc. v. Azar, 947 F.3d 321, 326 (5th Cir. 2020) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 538–39, 542 (1985)). When evaluating administrative procedure and procedural safeguards as to whether there is a constitutional due process violation, and what process a provider "deserves," the Mathews test "enters the picture." A1 Diabetes & Med. Supply v. Azar, 937 F.3d 613, 619 (6th Cir. 2019).[10] Under the Mathews test, the court weighs:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Sahara, 975 F.3d at 529 (quoting Mathews, 424 U.S. at 335). "Due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (citation modified).

As explained below, Compass's due process rights were not violated, as a matter of law. Thus, its motion for summary judgment is denied.

---

[10] The parties do not address each component of the Mathews test in their filings.

A.      **Count Three (Delay)**

As to Count Three, Compass argues that the Secretary's nearly five-year delay in the ALJ hearings led to an accumulation of undue interest, violating Compass's due process rights.  (See 22, ECF No. 73-1 at PageID 722–23.)  Compass asserts that it "is not seeking this Court to modify a statutory provision; rather, it is merely seeking the Court to intervene because of an improper accumulation of interest."  (22, ECF No. 77 at PageID 752.)  According to Compass, it could not escalate past the ALJ hearing because, if it did so, it would have forfeited its opportunity to be heard "in a meaningful manner."  (Id. at PageID 753.)  Compass also argues that it lacked the documentation needed to meaningfully challenge the extrapolation.  (ECF No. 73-1 at PageID 725.)  In response, the Secretary argues that Congress itself prescribed interest accrual on Medicare overpayments, and Compass is not due relief because of the length of the appeals process.  (22, ECF Nos. 71 at PageID 678–79, 75 at PageID 739–40.)  He also asserts that Compass had all of the documentation needed.  (See 22, ECF No. 79 at PageID 780–81 n.2.)  The question of whether Compass's due process rights were violated is one of law, and thus the Court evaluates this issue de novo.

First, to the extent Compass challenges when interest begins to accrue, its argument lacks merit.  The statute provides that "interest on the overpayment shall accrue on and after the date of the original notice of overpayment."  42 U.S.C. § 1395ddd(f)(2)(B).  Thus, the accumulation of interest owed on a Medicare overpayment is not based on the appeal status, but rather on when an entity receives notice of an overpayment.  Indeed, a district court's efforts to modify the statutorily defined period for accruing interest are "plainly erroneous."  Johnson v. United States, 602 F.2d 734, 739 (6th Cir. 1979).

15

The finer point of Compass's challenge here appears to focus on the amount of interest accrued during the delay in the ALJ hearings. It is undisputed that the ALJ hearings happened nearly five years after Compass's timely demand for review.[11] The Secretary asserts that Congress prescribed a lengthy review process, which the Court cannot change. (See 22, ECF No. 71 at PageID 678–83.) Because Compass "could have chosen to escalate its appeal, in the interest of hastening the appeal along," and because it was due no more process than what was required under Medicare's remedial scheme, the Secretary asserts that Compass's due process rights were not violated. (Id.) Compass argues that it could not have escalated its appeal past Step Three—the ALJ hearing—without forfeiting the opportunity to be heard meaningfully, which it did not want to do. (See 22, ECF Nos. 73-1 at PageID 718–19; 77 at PageID 753.)

---

[11] Other courts have commented on the "years-long administrative logjam" causing providers to experience delays between Step 2 and Step 3 of the appeals process. Sahara, 975 F.3d at 527. Even with statutory guardrails, the current timeline for the Medicare reimbursement process is "incontrovertibly grotesque." Cumberland Cnty. Hosp. Sys., Inc. v. Burwell, 816 F.3d 48, 50 (4th Cir. 2016). A three-to-five year wait, like what Compass experienced in each matter, is "typical." Sahara, 975 F.3d at 525, 527. These delays occur for a number of reasons, including providers' reluctance to "escalate" appeals past Step 3 and forfeit their rights to an ALJ hearing. Am. Hosp. Ass'n v. Price, 867 F.3d 160, 163 (D.C. Cir. 2017); see also id. at 162–63 (noting that although the administrative appeals process is meant to take less than one year, causes such as "a large increase in the number of new beneficiaries as members of the 'baby boom' generation began to reach 65 and become eligible for Medicare," and "a growing sense, among at least some members of the provider community, that it is a good business practice to appeal every denied claim" contributed to a backlog beginning in 2011).

Some courts have questioned whether abiding by this timeline is even possible. See id. at 168–69. "Regrettably, delay is a natural concomitant of our administrative bureaucracy." Isaacs v. Bowen, 865 F.2d 468, 477 (2d Cir. 1989). Moreover, to address the backlog and adhere to the ninety-day requirement for ALJs, "the government would need to hire a veritable army of ALJs and their attendant support staff." Supreme Home Health Servs., Inc. v. Azar, 380 F. Supp. 3d 533, 557 (W.D. La. 2019), aff'd, 812 F. App'x 229 (5th Cir. 2020) (internal citation omitted). Given this longstanding history of delays, it is no surprise that Compass's appeals did not receive prompt review.

However, by not escalating, interest continued to accrue while these matters were pending before the ALJs.

Compass's reasoning for not escalating, based on an alleged lack of materials, is not supported by the record.  Although Compass seems to imply that it could not escalate past the ALJ hearings because it lacked the documentation needed to meaningfully challenge the statistical sampling and extrapolation, it does not specify what exactly it was missing.[12]  (See generally 22, ECF Nos. 73, 73-1, 77.)  According to the Secretary, Compass had the sought-after documents from the CMS contractors (22, ECF No. 79 at PageID 780–81 & n.2).  Also, in the $3.4 Million Matter, although OMHA sent Compass an incorrect case file, Compass received the correct file before the ALJ hearing.  (22, ECF No. 74 at ¶¶ 26–30.)

Additionally, the ALJ rulings themselves further demonstrate the record's sufficiency. Compass has not identified a point in the record wherein ALJ Parrish questioned whether Compass had a complete record before the ALJ hearing.  (See generally 22, ECF No. 1-1.) Similarly, although ALJ McCormick at first thought he was missing information when reviewing the consolidated $9.3 and $1.2 Million Matters, he ultimately stated that he had everything needed.  (23, ECF No. 63 at ¶ 45.)  Had Compass escalated, those making assessments at Step 4 and Step 5 would too have been able to make decisions based on a full record.[13]

---

[12]      To the extent that the documentation is connected to the issues raised in Counts One and Two, the Court has dismissed those counts.

[13] Compass does cite examples of additional briefs and expert reports that it provided to the ALJ.  (See 22, ECF No. 74 at ¶¶ 32–33; 23, ECF No. 61 at ¶¶ 53–55.)  However, its additional submissions do not demonstrate that Compass lacked the documentation that would have allowed it to escalate.

Moreover, the delays—and the resulting accrual of interest—are insufficient to constitute due process violations. The Fourth Circuit spoke of the options afforded the provider facing a delayed ALJ hearing, emphasizing what remains available:

> Were there no alternative for review, a prompt post-deprivation hearing by an ALJ might arguably be required to mitigate the risk of an erroneous deprivation of Medicare reimbursements. But there is an alternative here. Specifically, the statutory process provides for an ALJ hearing within 90 days, which, if delayed, may be bypassed to obtain a timely judicial hearing.

Accident, Inj. & Rehab., PC v. Azar, 943 F.3d 195, 203 (4th Cir. 2019)

Although frustrating, the delays Compass experienced in awaiting ALJ hearings did not result in procedural due process violations. "[B]ecause the administrative process anticipates and accommodates potential delays in obtaining ALJ review, the due process validity of the process does not depend on the timeliness of an ALJ hearing." Accident, Inj. & Rehab., 943 F.3d at 204; see also Cumberland, 816 F.3d at 56 ("While the Act gives the [appellant] the clear and indisputable right to this administrative process, it does not give it a clear and indisputable right to adjudication of its appeals before an ALJ within 90 days."). Escalation is intended to allow post deprivation review to be heard in court, see Accident, Inj. & Rehab., 943 F.3d at 204, and "[j]udicial review 'is the classic protection provided by the Due Process Clause against arbitrary deprivations of life, liberty, or property,'" MedEnvios Healthcare, Inc. v. Becerra, No. 23-20068-CIV, 2024 WL 4894677, at *5 (S.D. Fla. Nov. 26, 2024) (quoting Padda v. Becerra, 37 F.4th 1376, 1383 (8th Cir. 2022)). In essence, the statutory framework provides multiple opportunities for a provider to be heard. Here, Compass has not demonstrated why escalation would have deprived it of its constitutional due process rights. And, without escalation, interest accrued pursuant to the statutory scheme.

Compass argues that the delay "constituted a penalty against Compass and an improper taking of Compass's 'own money'" (22, ECF No. 73-1 at PageID 723), but the case law cited in support is inapposite and nonbinding.  For instance, in <u>Family Rehabilitation Inc. v. Azar</u>, No. 3:17-CV-3008-K, 2018 WL 2670730 (N.D. Tex. June 4, 2018), a provider sought to enjoin CMS from withholding or continually recouping Medicare payments until an ALJ decision.  Because the provider did not receive its statutorily entitled ALJ hearing within ninety days and because continued recoupment before the ALJ's decision would force the provider to close its doors, the court determined that the provider had a likely successful procedural due process challenge.  <u>Id.</u> at *3.  However, that court did not consider the alternative appeal steps that Congress created, such as escalation.  Moreover, Compass has not argued that continued recoupment or payment of interest would have forced it to close.

In addition, <u>On Call Home Health Services Inc. v. Azar</u>, No. 17-cv-00252, 2020 WL 13441545 (S.D. Tex. Jan. 29, 2020), is also unpersuasive.  There, the court considered a plaintiff's request to enjoin recoupment and found no justification for the "administrative 'logjam'" prolonging the ALJ hearing.  <u>Id.</u> at *7.  But the court acknowledged that the delay in part "stem[med] from the inaccessible evidence" that the relevant MAC could not consider in making its assessment.  <u>Id.</u> at *7–8.  Although the provider had the evidence shortly before its ALJ hearing, the <u>On Call Home Health Services</u> court was "unpersuaded" by explanations for the delay.  <u>Id.</u> at *7.  But here, Compass has not pointed to instances when Cahaba could not access filings or when Cahaba's respective decisions were encumbered by deficiencies in evidence.

Because Compass has not demonstrated that the delays themselves and the resulting
accrued interest establish procedural due process violations, Compass's motions for summary
judgment on Count Three is **DENIED**.

### B.    Count Four (Alleged Improper Recoupment)

Next, Compass argues that the Secretary improperly began recoupment of funds before it
had the opportunity to contest the overpayment decision, violating its due process rights and the
Social Security Act.  (See 22, ECF No. 73-1 at PageID 723–25.)  According to Compass, the
Secretary withheld statistical sampling and extrapolation documentation, which he was required
to provide to Compass, from the beginning of the appeals process.  (Id. at PageID 723; 22, ECF
No. 77 at PageID 754–55.)  Compass argues that recoupment should not occur before a provider
receives "notice and an opportunity to be heard" via redetermination and reconsideration, or
Steps 1 and 2, and that it should have been provided all necessary documents to challenge the
extrapolation determination at these stages.  (22, ECF No. 73-1 at PageID 723–24 (citing 42
U.S.C. § 1395ddd(f)(2)).)

The Secretary responds that Compass's arguments about improper recoupment are
"vague" and deficient.  (22, ECF Nos. 75 at PageID 741; 79 at PageID 782.)  In his response to
Compass's summary judgment motion, the Secretary argues that Compass offers no meaningful
support for its theory that the method of recoupment was improper.  (22, ECF No. 75 at PageID
740, 741.)  In a later filing, the Secretary adds that, when Compass decided to participate in the
Medicaid program, it subscribed itself to certain burdens imposed by Congress, including the
timing of recoupment.  (22, ECF No. 79 at PageID 782–83.)  The Secretary also argues that
Compass had all the documents needed before the ALJ hearings.  (Id. at PageID 780–71 & n.2.)

The Court reviews this issue of law de novo. First, as noted earlier, recoupment is not permitted during the first two stages of administrative review—the redetermination and the reconsideration phases. 42 U.S.C. § 1395ddd(f)(2)(A). Upon a determination that recoupment should go "into effect," the MAC must give the provider notice and an opportunity for "rebuttal." 42 C.F.R. § 405.373(a). Once Steps 1 and 2 of the appeals process are complete, if a provider appeals overpayment to the ALJ, the Council, or to the district court, Medicare can recoup overpayments until a debt is satisfied. 42 C.F.R. §§ 405.379(d)(4)-(5).

Here, recoupment did not begin until Steps 1 and 2 were complete. (22, ECF No. 73-1 at PageID 724–25.) So it is unclear why Compass argues that it was premature. Moreover, Compass has not described how it was denied the opportunity to meaningfully challenge extrapolation, or what specific documents it was missing. Recouping overpayments after Step 2 but prior to an ALJ decision does not violate procedural due process on its own. See Padda, 37 F.4th at 1384; Accident, Inj. & Rehab, 943 F.3d at 204–05; Sahara, 975 F.3d at 530.

To argue that this Court should find a procedural due process violation "premised on improper recoupment," Compass attempts to distinguish its circumstance from the Eighth Circuit's decision in Padda. (22, ECF Nos. 73-1 at PageID 724–25; 77 at PageID 755.) In Padda, a provider challenged an overpayment decision through redetermination and reconsideration, after which recoupment began. 37 F.4th at 1381. The provider requested an ALJ hearing, which was not held within ninety days, and it declined to escalate the case to the Council. Id. Instead, the provider sought to enjoin Medicare from recouping until after the ALJ hearing. Id.

The Padda court concluded that the recoupment did not violate the provider's procedural due process rights. According to the court, during Steps 1 and 2 of the appeals process, the

21

provider received notice and an opportunity to be heard. Id. at 1383. The provider was represented by counsel, submitted written arguments and evidence, and received "written, reasoned decisions" after the first two steps. Id. Additionally, during Step 2, he had an expert report and received review by an expert panel. Id. The court also noted the provider's lack of escalation. Id.

According to Compass, although the provider in Padda had "two bites at the proverbial apple," presumably during Steps 1 and 2 of the appeals process, Compass "was not afforded the documentation necessary to mount a meaningful challenge to the extrapolation." (22, ECF No. 73-1 at PageID 724–25.) Compass argues that, given the purported lack of documentation, it was inappropriate for the Secretary to impose recoupment as Compass waited for the ALJ hearings. (See id.) The Secretary responds that Compass acknowledged receipt of documentation. (22, ECF No 75 at PageID 741 n.6.)

Ultimately, because Compass has not demonstrated precisely what it was denied during Steps 1 and 2, Padda is an unsuccessful foil. In its summary judgment motions and its responses to the Secretary's motions, Compass fails to specify what was missing that would have allowed Compass to have "two bites at the proverbial apple" during redetermination and reconsideration. As the Secretary identified, AdvanceMed, Cahaba, and C2C provided sought-after documentation. (22, ECF No. 79 at PageID 780–81 n.2.) Indeed, the very fact that Compass "is not challenging the merits of the individual claims determinations," but is only alleging due process violations (22, ECF No. 77 at PageID 749), suggests that Compass had enough documents to decide not to attack the merits of the determinations. In the end, if the overpayments were to ultimately be deemed improper, the law allows Compass to receive those

22

funds back with interest.  42 U.S.C. § 1395ddd(f)(2)(B).  Thus, Compass still enjoys protections under the remedial scheme.

Without question, the process Compass encountered was not seamless.  But "[t]he Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations."  Mackey v. Montrym, 443 U.S. 1, 13 (1979).  An imperfect process can still reasonably meet the particular audit's needs and due process requirements.  See MedEnvios, 2024 WL 4894677, at *5.

Because Compass has failed to demonstrate how the recoupment was improper or a due process violation, Compass's Motions for Summary Judgment as to Count Four are **DENIED**.

## II.    The Secretary's Summary Judgment Motions

In his motions for summary judgment, the Secretary argues that the ALJ decisions "comport with the evidence and applicable standards," and thus summary judgment in his favor is appropriate.  (22, ECF No. 71 at PageID 675–78.)  Compass responds that it is "not challenging the merits of the individual claims determinations, but rather only raised legal challenges as to the violation of Compass's due process rights."  (22, ECF No. 77 at PageID 749.)

Final agency decisions must be reviewed under the substantial evidence standard.  See 42 C.F.R. § 405.1136.  Under this deferential framework, if there is substantial evidence to support the Secretary's decision, its determination must be affirmed.  Gen. Med., 963 F.3d at 520 (citing Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)).  As long as the finding is supported by the record, the court does not even need to agree with the Secretary's finding.  See Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (citing Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389–90 (6th Cir. 1999)).  The court can enter a judgment

"affirming, modifying, or reversing" the Secretary's decision based on pleadings and the transcript.  42 U.S.C. § 405(g); see also 42 U.S.C. § 1395ff(b)(1) (incorporating the judicial review provision of the Social Security Act).

Normally, the Council's decisions are considered final and binding, absent a federal district court opinion.  42 C.F.R. § 405.1130.  However, because the Council did not reach decisions for either matter, the ALJ decisions are the final decisions at issue here.  See 42 C.F.R. § 405.1132; Kalmbach v. Comm'r of Soc. Sec., 409 F. App'x 852, 853–54 (6th Cir. 2011)

Upon review, the final agency decisions issued by ALJ McCormick and ALJ Parrish are consistent with the evidence and applicable standards.  The ALJs discussed each Medicare claim in the samples assessed during the audit process.  (22, ECF No. 72 at ¶¶ 2, 5–6.)  Each ALJ carefully evaluated the evidence submitted.  (See 22, ECF No. 71 at PageID 676.)  In both decisions, the ALJs outlined reasoned explanations that relied on the evidence before them.  (See id. at PageID 678.)

Based on the substantial evidence standard, summary judgment in favor of the Secretary is **GRANTED**.  The outcome of the ALJ's decisions for the three matters is **AFFIRMED**.

## CONCLUSION

The Secretary's motions for summary judgment are **GRANTED** and Compass's motions for summary judgment are **DENIED**.  Compass's due process rights were not violated (1) when the delay in the ALJ review led to an accumulation of interest or (2) when the Secretary began recouping funds.  The respective ALJ reviewers adhered to proper procedures when assessing Compass's claims.

**IT IS SO ORDERED,** this 24th day of September, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE